# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOSHUA E. COLE,**

    Plaintiff,

  v.                                                                                                        **Case No. 17-cv-658**

**THOMAS GROSSMAN, JR.,**

    Defendant.

## DECISION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Joshua Cole brings this 42 U.S.C. § 1983 action against defendant Dr. Thomas Grossman, Jr., alleging that Dr. Grossman was deliberately indifferent to his medical needs in violation of the Eighth Amendment. Dr. Grossman filed a motion for summary judgment. For the reasons explained below, the motion will be granted.

## RELEVANT FACTS[1]

Cole is a Wisconsin state inmate, currently housed at Oshkosh Correctional Institution. Between November 2015 and March 2016, Cole was housed at Waupun Correctional Institution. Dr. Grossman is an orthopedic surgeon. During 2016, he was employed by Agnesian Healthcare; about 80% of his patient population consisted of inmates referred by the Wisconsin Department of Corrections.

---

[1] I take the facts from "Defendant Thomas Grossman, Jr., M.D.'s Proposed Findings of Fact in Support of Motion for Summary Judgment" (Docket # 28). Cole did not respond to Dr. Grossman's proposed findings of fact, so they are accepted as undisputed for the purpose of summary judgment. *See* Fed. R. Civ. P. 56(e)(2), Civil L.R. 56(b)(4) (E.D. Wis.).

In late 2010, Cole began to have difficulty flexing his right thumb. Docket # 28, ¶ 9. Cole was treated by Dr. Manlove, the DOC physician in charge of medical care at Waupun. *Id*. ¶ 11. Dr. Manlove referred Cole to Dr. Grossman for an orthopedic consult. *Id.*

On November 11, 2015, Dr. Grossman saw Cole for the first time at the Fond du Lac Regional Clinic. *Id*. ¶ 13. Dr. Grossman ordered x-rays of Cole's right thumb in advance of the appointment. *Id*. ¶ 14. The x-rays revealed a deformity of the distal phalanx[2] of the right thumb, both at the base and at the tuff. *Id*. ¶ 15. Cole told Dr. Grossman that he was not able to flex the end joint of his thumb. *Id*. ¶ 16. Although he said that he had not injured it and that it did not hurt, he explained that it did not work very well. *Id*.

Dr. Grossman examined Cole's thumb and then discussed several treatment options with him, including a thumb joint fusion. *Id*. ¶ 18. Dr. Grossman explained to Cole that a thumb fusion would be an elective procedure, and he discussed with Cole the potential risks of the procedure, including bleeding, infection, damage to nerves and blood vessels, scars, swelling, stiffness, an inability to relieve Cole's complaints, and a potential need for further interventions. *Id*. ¶ 19. Cole decided to proceed with the proposed thumb fusion and told Dr. Grossman that he had no unanswered questions. *Id*. ¶ 21.

Dr. Grossman returned Cole to Dr. Manlove at Waupun for approval of the proposed procedure and the completion of a preoperative history and physical. *Id*. ¶ 22. Dr. Manlove obtained institutional approval for the proposed thumb fusion. *Id*. ¶ 23. The surgery was scheduled for March 10, 2016. *Id*. ¶ 24.

On March 10, 2016, Dr. Grossman proceeded with the right thumb joint fusion. *Id*. ¶ 29. Based upon Dr. Grossman's experience and training as an orthopedic surgeon, as well

---

[2] Distal phalanx: small, spade-shaped bone in the end of the thumb underlying the nail bed. *Stedmans Medical Dictionary* 676690 (Nov. 2014).

as his knowledge of the orthopedic literature at that time, he chose to use an 18-gauge needle and 26-gauge wire and a 90/90 interosseous wiring technique in Cole's fusion surgery. *Id*. ¶ 30. According to Dr. Grossman, the technique and hardware that he chose to use were well-documented in the literature as a routine and usual method for small joint fusion in March 2016, and complied with the standard of care. *Id*. ¶ 31.

The thumb joint procedure was completed without complication, and Cole was sent to the recovery room in good condition. *Id*. ¶ 32. Following surgery, Cole was discharged back to Waupun. *Id*. ¶ 33. Dr. Grossman's post-operative recommendations to Dr. Manlove included: "Change the dressing in 72 hours. Resplint, repad the splint. Do not let him use the right thumb at all. Change the dressing as required. Keep the wound dry. Sutures out in 14 days. See me in 14 days. I can take the sutures out if you want. Vicodin 2 [orally] every 4 hours [as needed for] pain. Call me if there are any questions." *Id.*

Dr. Grossman explains that he did not prescribe post-operative antibiotics to Cole because the medical literature and the standard of care mandated that routine post-operative antibiotics not be prescribed. *Id*. ¶ 36. Cole did not have any clinical signs or symptoms of infection at the time of the operation. *Id.* At Dr. Manlove's request, a follow-up consultation appointment was approved and scheduled. *Id*. ¶ 37.

On March 30, 2016, Cole saw Dr. Grossman at the Fond du Lac Regional Clinic. *Id*. ¶ 38. Dr. Grossman ordered x-rays of Cole's right thumb *Id*. ¶ 39. The x-rays revealed a "focal discontinuity of one of the fusion cerclage wires, and slight widening of the interphalangeal joint space which suggested the presence of a joint effusion.[3]" *Id*. ¶ 40.

---
[3] Joint effusion: increased fluid in the cavity of a joint. *Stedmans Medical Dictionary* 280790 (Nov. 2014).

Cole told Dr. Grossman that he had been given antibiotics at Waupun and that he was performing dressing changes. *Id.* ¶ 41. Upon examination, Dr. Grossman noted that Cole's surgical wound showed some drainage and erythema, and, after reviewing the x-rays, he noted that one of the wires used during the procedure was broken. *Id.* ¶ 42. Dr. Grossman noted in his office notes that, "[I]t is conceivable that the operation has been compromised." *Id.* ¶ 43.

Dr. Grossman recommended that Cole's providers at Waupun give him the antibiotic Septra DS and damp to dry dressing changes. *Id.* ¶ 44. Dr. Grossman also recommended that Cole return to see him in two weeks. *Id.* ¶ 45. Dr. Grossman explains that his intention in having Cole return in two weeks was to allow the antibiotic time to resolve the infection in the thumb, at which time they would discuss the best way to address any remaining issues with the thumb fusion. *Id.* ¶ 46.

Cole was returned to his providers at Waupun. *Id.* ¶ 47. That was the last time Dr. Grossman had any contact with Cole. *Id.* ¶ 48, 50, 61. Although Dr. Grossman had recommended Cole see him again in two weeks, Cole refused to see Dr. Grossman again. *Id.* ¶ 49.

## DISCUSSION

1.  Legal Framework

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). When considering a motion for summary judgment, I take evidence in the light

most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

2. Analysis

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove a deliberate-indifference claim, a plaintiff must first show that he has "a medical condition 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would

5

perceive the need for a doctor's attention.'" *Edwards v. Snyder*, 478 F.3d 827, 830–31(7th Cir. 2007) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).

He must then show "that the prison official[s] knew of 'a substantial risk of harm to [him] and disregarded the risk.'" *Id*. at 831 (first quoting *Greeno*, 414 F.3d at 653; and then citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Medical malpractice or a disagreement as to the proper course of medical treatment is not deliberate indifference. *Id*. (first citing *Estelle*, 429 U.S. at 107; then citing *Greeno*, 414 F.3d at 653; and then citing *Estate of Cody by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). In order to survive summary judgment, the evidence must be such that a reasonable jury "could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." *Id*. (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

The parties agree that plaintiff's thumb injury was a serious condition mandating treatment, so Cole satisfies the objective element of this standard. My analysis will therefore focus on whether a reasonable jury could conclude that Dr. Grossman was deliberately indifferent to plaintiff's condition. There are two components to Cole's deliberate indifference claim: (1) that Dr. Grossman selected the wrong hardware to use during the fusion procedure; and (2) that Dr. Grossman chose not to prescribe a prophylactic antibiotic after the procedure.

The Seventh Circuit has explained that it is improper to parse a treatment into discrete actions; rather, a court should view the entire treatment as a whole. *Snipes v. De Talla*, 95 F.3d 586, 591 (7th Cir. 1996). In Dr. Grossman's medical judgment, Cole's thumb problem could possibly be addressed by fusing the thumb joint. After having the procedure explained to him, Cole agreed with Dr. Grossman and chose to have him perform the

procedure. This procedure then included a number of minor medical decisions, including what hardware to use and whether to prescribe antibiotics. Those discrete decisions "are classic example[s] of matter[s] for medical judgment." *Id.* (citations and internal quotation marks excluded).

Dr. Grossman did not ignore Cole's condition or refuse to treat it; instead, he made "a deliberate decision . . . to treat a medical need in a particular manner." *Id.* This is not a demonstration of deliberate indifference. Cole (as a layperson with no medical experience) disagrees with Dr. Grossman's decisions, "but a mere disagreement with the course of [the inmate's] medical treatment [does not constitute] an Eighth Amendment claim of deliberate indifference." *Snipes v. DeTella*, 95 f.3d 586, 592 (7th Cir. 1996) (citations and internal quotation marks omitted).

Regardless, even if Cole could parse the procedure into discrete decisions, he fails to create a genuine dispute of fact on either decision he challenges and therefore no reasonable jury could find in his favor. Dr. Grossman explains that he determined what hardware and technique to use based on his experience and training as an orthopedic surgeon as well as his knowledge of the orthopedic literature as of March 2016. Cole responds that he thinks Dr. Grossman should have used a thicker wire made out of a different material, but he provides no support for this opinion. Similarly, Dr. Grossman explains that he did not prescribe an antibiotic immediately after the procedure because Cole showed no symptoms of an infection immediately after the procedure and the medical literature and standard of care required that routine post-operative antibiotics *not* be prescribed. Again, Cole disagrees with that decision, but he provides no basis for his disagreement other than his opinion that Dr. Grossman should have handled the situation differently.

Because Cole provides no evidence to rebut Dr. Grossman's assertions that, based on his experience, training, and knowledge of the medical literature available at that time, each challenged decision was consistent with the prevailing standard of care, no reasonable jury could find in Cole's favor.

Finally, in his response to Dr. Grossman's summary judgment motion, Cole once again asks the court to recruit a lawyer to represent him or grant him "more time to find the proof required to show the wrongs that [he] allege[s]." Docket # 36. With regard to Cole's request for counsel, I note that I have already denied three previous motions for counsel. Most recently, on January 29, 2018, a few weeks after Dr. Grossman filed his summary judgment motion, I explained to Cole that nearly all prisoner plaintiffs have no legal training, limited education, and limited resources, so those reasons are insufficient on their own to warrant the recruitment of counsel. I also highlighted that Cole had demonstrated an understanding of the issues in his case and had successfully completed tasks that attend litigation such as the exchange of discovery. I continue to believe that Cole was capable of responding to Dr. Grossman's motion.

Regardless, even if I had recruited counsel for Cole and even if his recruited counsel had obtained the testimony of an expert, at most Cole would have been able to demonstrate a disagreement between medical professionals as to what hardware should have been used and whether routine post-operative antibiotics should have been prescribed. But "disagreement among doctors, without evidence that one is not exercising medical judgment, is not evidence of deliberate indifference." *DeJesus v. Godinez*, Case No. 16-3664, 2017 WL 6539380, at *4 (7th Cir. Dec. 21, 2017) (citations omitted). As such, Cole cannot demonstrate that he suffered any prejudice from my decision to not recruit a volunteer

lawyer to represent him. *See Santiago v. Walls*, 599 F.3d 749, 765 (7th Cir. 2010) (holding that there must be reasonable likelihood that the presence of counsel would have altered the outcome of the case).

As to Cole's request that he be given "more time to find the proof required" The parties had four months to complete discovery. At no time during the discovery period did Cole request an extension of time; instead, he waited until more than a month after the discovery period had closed. I find that his request comes too late.

**THEREFORE**, **IT IS ORDERED** that defendant's motion for summary judgment (Docket # 27) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. Judgment will be entered accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one

year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 25th day of April, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge